**In the Matter of the Estate of
LUCILLE JOSEPH, Deceased**

Probate No. 15-1955
District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

June 28, 1956

*See, also, 141 F. Supp. 865*

JOHN L. PHILLIPS, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for administrator Leroy Joseph*

JAMES A. BOUGH, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for claimant Leonard LaBeet*

MOORE, *Judge*

This matter came on for hearing on appeal by the claimant, Leonard LaBeet, through his attorney James A. Bough, Esquire, from the findings and conclusion of law of the District Court Commissioner, dated November 4, 1955, in the above-entitled matter.

The administrator, Leroy Joseph, was represented by attorney John L. Phillips, Esquire, and the claimant, Leonard LaBeet, was represented by James A. Bough, Esquire.

It appears from the evidence adduced at the Commissioner's hearing that the claimant, Leonard LaBeet, had

arranged with Mrs. Elmira Lockhart of this city to furnish room and board to his sister, Lucille Joseph, nee La-Beet, during the period from November 1941 up to and including November 1943 at an agreed price of $15 per week, making a total claim of $1,500.

The evidence also shows that claimant raised decedent from the age of twelve years, acting in loco parentis rather than in the relationship of brother and sister. Claimant asserts this was done at the request of his father since decedent was not the daughter of claimant's mother.

It is further disclosed by the evidence that sometime in October of 1941 claimant opened a Parkway Bar and Grill and had decedent, who was then residing in New York City, come to the Virgin Islands to assist him inasmuch as claimant had no dependents at the time upon whom he could rely for help, until 1942 when he was subsequently married.

Claimant asserts that upon the arrival of decedent he took her to the home of Elmira Lockhart who provided room and board at the rate of $15 per week which he claims was paid by him in cash and for which he did not obtain receipts. However, Mrs. Lockhart testified that although she never kept a record of her transactions with the parties herein, that some of the time decedent paid her and some of the time claimant paid her, but that she could not positively state the times or the amounts paid by decedent or claimant.

Upon interrogation by the Commissioner as to whether claimant expected to be reimbursed for this service, he declared: "I did not ask her to pay me back. I thought she would have paid me at her convenience."

Certainly, from the evidence before this Court, it can not be said that the claimant expected to be repaid for the monies which he expended for decedent's room and board, for even at the termination of this arrangement, and for

seven years thereafter and immediately preceding her death, the claimant never raised the question or in any way apprised decedent of his desire to be repaid.

On the other hand, the evidence shows that decedent worked in claimant's Parkway Bar and Grill from the date of her arrival in the Virgin Islands until she left for the United States in 1943, and that at no time, even up to and including her demise, did she receive any remuneration or compensation for her services. The claimant, however, admits that it all sprang from a promise to his father to look after and care for his sister which would definitely ground it either as a gratuity performed from the goodness of his heart, or as a reciprocal help between the parties.

■■ This court is not in disagreement with claimant's position, in the case of Moore v. Renick, 95 Mo.App. 202, 68 S.W. 936, 938, that "the existence of the relation of brother and sister is not per se sufficient to authorize the presumption that services performed by one for the other were gratuitous, unless they lived together and thereby created the family relation." 11 L.R.A. (n.s.) 883. However, this court is of the opinion that under the evidence here, it is clear that the services performed by each were for the mutual benefit of both parties.

■ It is well settled that "parol evidence, and that is the only evidence there is in this case, against the estate of a dead man is weak; it should be corroborated to some extent at least." Calhoun v. McKnight, 44 La. Ann. 577, 10 So. 783; Townsend's Succession, 40 La. Ann. 79, 3 So. 488; Bodenheimer v. Bodenheimer's Ex'rs, 35 La. Ann. 1007; Hennen's Digest p. 518, No. 7. See 29 L.R.A. (n.s.) 298. No corrobration has been offered by claimant. Obviously the testimony of decedent's landlady is weak and offers little, if any, support to claimant's demand.

■■ The court is of the opinion that appellant's failure to assert his claim until after his sister's death weighs

heavily against him. Also, that "it is well settled that no man can do another an unsolicited kindness and make it a matter of claim against him; and it makes no difference whether the act was done from mere good-will or in the expectation of compensation. Unless the party benefited has done some act from which his assent to pay for the service may be fairly inferred, he is not bound to pay. Reason v. Windman, 1 Car. & P. 434; Pelly v. Rawlins, Peak's Ad. Cas. 226; Alexander v. Vane, 1 Mee. & W. 511; Parker v. Crane, 6 Wend. N.Y. 647; 1 Sel. N.P. 48; 2 Greenl.Ev. 83."

 Claimant's attorney, in his argument to the Court, seeks to have this matter determined on the basis of quantum meruit. He contends that the evidence has established the period which appellant claims to have made his $15 weekly payments to decedent's landlady, and although the latter has failed to produce any records for the consideration of the court which would positively establish the amounts paid both by claimant and decedent, the Court should make an award of a reasonable amount which, in the opinion of the Court, would compensate the claimant.

This Court cannot subscribe to a theory so vague and speculative. Moreover, since the administrator is making no claim as a set-off for services rendered by decedent during the identical period in question, this court is left without any yard-stick to measure one against the other.

The Court, therefore, is of the opinion that upon the facts stated, there is no basis upon which an implied contract can rest, and no consideration for an implied promise and that, therefore, the claim should be disallowed.

Orders may be drawn in accordance with this opinion.